Case No. 14-3352, People v. Paul Ciborowski All right, we'll pass this rule and for argument of matter, please step forward. Please state your name for the record. Good morning, Your Honor. For the record, Attorney Sammy Azari, A-Z-H-A-R-I, I represent Paul Ciborowski. Good morning, Your Honor. Brandon Hudson, representing the people of the state of Illinois. All right, so we'll give you 15 minutes apiece. You want time for a rebuttal? I do, Judge. All right, how much time? A minute should be sufficient. Okay, all right. We'll proceed. Thank you, Judge. Good morning, Your Honor. May it please the Court, my name is Sammy Azari and I represent the appellant Paul Ciborowski. In the interest of time, I'm just going to focus on two arguments that I made in my brief, specifically that the trial court erred in denying the motion to quash that was filed to suppress evidence given the officer's lack of qualifications in effectuating the arrest. And the second argument that I'd like to make is that the trial court erred in finding Mr. Ciborowski guilty of driving under the influence of drugs given the fact that there wasn't sufficient evidence to convict. Now, when Officer Moore arrived on the scene, there was a significant three-car accident. Mr. Ciborowski's vehicle was the rear vehicle that struck the vehicle in front of him with sufficient impact that the license plate was actually embedded in the vehicle in front of it, and that vehicle struck the vehicle in front of it, causing a significant accident, which is why Officer Moore survived on the scene. Now, when Officer Moore arrived on the scene to conduct his investigation, he determined... Now, were the cars in front stopped? Yes, they were. At a light? Your Honor, I can't recall if it was at a light, but they were stopped. They were not moving at those rush hour traffic at the time. Is it your contention, although it wasn't in your brief, that your client was sleepy and tired and not under the influence of drugs? Well, Your Honor, that's what the officer testified to. He believed my client was sleepy and tired, and he reached the conclusion that it was as a result of the prescription drugs that Mr. Ciborowski said that he was taking at the time. So, that was the allegation that was made by Officer Moores. The issue that we raised in the motion was that Officer Moores was unqualified to say that the observations that he made was as a result of Mr. Ciborowski consuming prescription medication, and that's where his qualifications come into play. Well, you don't think that the officer had a right to take your client and put him in the squad car for safety purposes? Well, there were a number of things that he could have done with Mr. Ciborowski. You could have... No, just answer my question. Do you think that he had the right to do that? It's either a yes or no, if there's no other answer. Your Honor, I don't think he had a right to do that. I think at the point that he places Mr. Ciborowski in the squad car, I think that that's a seizure. And at that point, he's made up his mind that he's going to place Mr. Ciborowski under arrest. Now, the... Didn't the seizure actually take place after he administered the test, and then your client failed the test, in the officer's opinion? Well, as far as when the seizure actually occurred, it's really going to depend on when Mr. Ciborowski felt that he was free to leave. Now, at the point where the officer arrives on the scene, he sees a significant three-car accident. Officer Morris speaks to the other people that were involved in the accident in terms that Mr. Ciborowski's at fault. Now, he's talking to Mr. Ciborowski, and he says, here, Ryan, come take a seat in the back of my squad car. At that point, it's unreasonable that somebody would feel free to leave. What if Mr. Ciborowski said, no, I'm not going to sit in your squad car, I'm just going to... But he didn't, did he? He didn't say that. But at that point, when an officer's telling you to take a seat in the backseat of a squad car, there's a notion that you're not free to leave at that point. And at that point, there's a seizure taking place. Now, the issue that comes up is whether Officer Morris had the qualification. Let me ask you this. If you see somebody who's kind of wobbly and shoveled and you're on a highway, isn't it reasonable for an officer to take this person for safety purposes and put them in the backseat of a squad car? I mean, isn't that what every officer should do, every good officer? Well, I think what you're getting to is the community caretaking exception, Your Honor, and I think that would apply if there was no investigation of a crime. Now, here we have an accident, and it was determined based on Officer Morris' investigation of talking to the other drivers that were involved that Ciborowski was at fault. So here, the community caretaking exception wouldn't apply because of the fact that it was part of an investigation of a crime. The community caretaking exception was outlined in Keeley v. Dombrowski, and there were specific examples that the court gave in that case, and some of them were helping children find their parents, mediating noise disputes, helping the new breeds find their way home. So there's no investigation of a crime for the community caretaking exception to apply. So at that point, if an officer were to come up on someone that might have been wobbly or didn't have the cognitive ability, didn't know where they were, and an officer may be lent a helping hand, at that point you're looking at either a consensual encounter or an exception to a seizure through the community caretaking exception. So I would disagree that it would be reasonable in this particular case, given the fact that it was part of a criminal investigation. Well, also, wasn't there an issue with regards to his mental capacity? I mean, he asked for an insurance card, gives them the, what, the AAA or the ARP card. He asked them where he was driving. He mentioned streets that didn't even intersect. So there was some question as to whether or not he was totally present, whether or not it was a result of the drugs or not, but the officer, when he was conducting his investigation, was making inquiries of the client who wasn't being totally responsive to the questions being posed. And I understand that, and I agree with you, Judge. He wasn't really, some of the response he gave was not entirely coherent, given the questions that were posed to him. But there was significant evidence, kind of, regarding this accident that took place. Mr. Soborowski's vehicle was already eating food, and Dave Nielsen testified he's the driver of the vehicle that Mr. Soborowski hit. The damage to his car was so significant that the estimate that he got in the vehicle was about $10,000 worth of damage. So we're talking about a significant impact here. And Officer Morris couldn't testify credibly as to whether or not the lack of coherence on Mr. Soborowski's part was due to the accident or due to the prescription medication or any other reason. He's never met Mr. Soborowski before. He has no idea whether those are his typical mannerisms or whether he typically displays the lack of cognitive abilities that he displayed that morning or that afternoon. So the officer couldn't have reached a conclusion that was based on the medication that he was on. Specifically, I want to add that it would be one thing if you had some training or some recognition of the medication that Mr. Soborowski said he was on. But here, I think it's crucial that he had no idea. Specifically, there were three types of medication that Mr. Soborowski said he was taking, Zoloft, Ambien, and Cerexium. Mr. Soborowski and, I'm sorry, Officer Morris had never seen anyone under the influence of Zoloft. He'd never heard of Ambien other than a television commercial, and he'd never heard of Cerexium. He has no idea what effect these drugs have on a human being. He has no idea how they would impact someone's ability to drive or their cognitive abilities. So for someone to have an individual telling them they're taking a certain prescription medication and for you to make the leap that that medication is rendering you incapable of safely driving, I think was unreasonable. I think there's any number of things that he could have done. He could have just taken Mr. Soborowski home. He could have gotten medical attention if he felt it was necessary. But to effectuate an arrest and accuse someone of committing a criminal offense, I think was unreasonable, and I think the trial court erred in denying the motion of quash given his lack of qualifications. The issue that we have here is that there's not any case law on whether or not the court is reasonable in granting or denying a motion of quash based on an officer's lack of qualifications for recognizing drugs. The cases that I found false, Van Zant, and Jacquees were all cited in the briefs. Those all dealt with the appellate court deciding whether or not the trial court was correct in determining a finding of guilty. Now, in Fitts specifically, the court decided that the officer did not have the necessary experience to provide sufficient testimony that the defendant was under the influence of drugs, despite the fact that there being other evidence. And that was actually a case that involved combined influence of drugs and alcohol. So there were other indicators of impairment that the officer would be familiar with. In this case, there was no alcohol impairment. There was no odor of alcohol or beverage. There was no slurred speech. There was no bloodshot or glassy eyes, which would all indicate. Let me stop because I've read the briefs, and unless one of you is not telling the truth, the briefs say that the officer observed glassy eyes on the defendant, slurred, deliberate speech on the defendant, dilated pupils, things that are indicative of being under the influence of something. I know you're not saying that the officer had to know these specific drugs that he was under the influence of. But if you come up to a car accident where cars have been stopped in traffic, there's three cars. The one in the back is smashed into the one in the front. You can't get the cars apart without a tow truck. You have to ask the gentleman to step out. You either leave them standing on the road or you put them in the back of your car. It's unreasonable to me to put a person in the front seat of the police car. You can drive away with the car in the front seat. So you put them in the back seat. Now, with the observations that he made, because I haven't read the record yet, unless I'm incorrect, at least one of the briefs say that his pupils were dilated, that his speech was slurred, and I think it was a mush mouth or something. And I read in the judge's ruling, and the judge also said he observed the defendant. So it wasn't just the officer's statement. It was what the officer saw in the video. Cool. Judge, the observations that were made strike that. He didn't observe, he didn't detect an error in the alcohol beverage. He didn't. He didn't have to be under the influence of alcohol and drugs. He didn't have to be under the influence of drugs or a drug or some combination of drugs that don't have to be identified by the officer. I don't think anybody can look at anybody and say what kind of drugs they're on. You might be able to smell marijuana by that. But that's the question, though, is can anyone look at anyone and tell you that they're under the influence of a drug? And the case law is pretty clear that you need some sort of relevant experience or training with respect to that. So for you to look at someone, and Officer Morse was allowed to testify to that, however, my objection that he believes that Mr. Sobroski was under the influence of some drug. Well, when we're talking about alcohol, there's always the standard observations that you make. Slow speech, bloodshot glassy eyes, order of alcohol at beverage, your inability to perform the standardized field sobriety test. Well, drugs have a wide variety of side effects that they can have. So you have drugs that are stimulants, some that are depressants. So for someone to look at someone and say, well, I think they're under the influence of a drug. Well, what drug? Can you narrow it down? Can you tell me what category, drug? Can you tell me what the effects of that drug are? There's no case that says anybody has to tell you what kind of drug. An officer on the street making a probable cause determination doesn't have to tell you what kind of drug. When you just said that, I just remembered the officer said he was wobbling. They had to help him. He couldn't stand up on his own. I mean, without knowing, I mean, if you can't smell alcohol and the person's pupils are dilated and they can't true the eyes and their clothes are disheveled and they can't stand up on their own, quick, they're under the influence of some drug. I think that's, oh, yeah. No. Yeah, I know you don't. I mean, no. So you're arguing that given all those factors that Judge Lampkin just mentioned, all right, the officer is out there on the scene. He observes this individual. He's not altogether there as a result of swaying, dilated eyes, et cetera. He didn't have a basis to, at that point in time, to arrest the individual? Well, Your Honor, I think based on the case file, if this was an alcohol case, we would not be standing here today. That's not answering my question. I understand that. I'm getting to your question. My response is based on what is required of officers, I don't think it was reasonable for him to fluctuate the arrest. And that's what I argued in my motion, is that there has to be some sort of relevant training and experience that he has to make it easier. He did have experience. There was no objection to his experience. He was an experienced police officer and he had conducted a lot of arrests, driving under the influence, et cetera. So, I mean, we have experience here. We have an individual who obviously is under something, although maybe it wasn't apparent at the time what it was because he indicated that he didn't smell any cannabis. Right? He didn't smell any alcohol. Correct. So if you eliminate those two factors, okay, and then there's the conversation about the drugs, you know, what was the officer supposed to do at that time? Let him go? Well, Your Honor, you could have given him some sort of citation or less than for failure, which he did receive. I'm sorry? Which he did receive. Well, you could have arrested him for that as opposed to charging him with a crime that he wasn't qualified to charge him with, in my opinion. So I think, and I will keep going. Let me ask you this. What you'd like us to write is that in order for the state to prove somebody guilty of driving under the influence of prescription drugs, that the state would have to take blood tests and they'd have to have an expert come into court and testify that as a result of those blood tests, it shows that the prescription drugs had an effect on the person's driving. Yes. Is that what you feel the state must prove? Yes. Okay. And do you have any case in all of America, and I don't care whether it's Illinois or not, that says such a thing? Well, Your Honor, the cases that are pointed out in Fultz, Van Zant, and Jacque, those cases were all overturned on appeal because of the officer's failure to have the requisite qualifications to give an opinion as to whether or not someone's under the influence of drugs. And in those cases, they were combined alcohol and drug cases, and those officers were experiencing an effectual arrest for driving under the influence of alcohol. So because of their failure to have the qualifications under the drug category, those cases were overturned on appeal. Every one of those cases has a unique set of facts that really isn't relevant to this case. What you're saying is that in order to prove this, the state has such a heavy burden that they would have to take blood tests, then they'd have to have an expert come in to take those blood tests and be able to relate them as a basis to show that the person's driving ability was affected. Well, I'm not saying that somebody has to be an expert. I'm saying that someone has to have more training than Officer Morris did. So Officer Morris was very candid. Well, it's either an expert or not because, you know, more training is really silly to say more training. I mean, he's a police officer, a police officer who dealt with narcotics. He saw many people under the influence of drugs. If a person's not under the influence of liquor and they have these type of findings, then they must be under the influence of drugs. But you want us to write something that has never been written before in America. Well, Your Honor, I'm not asking you to write something that's never been written before. I'm asking you to consider the facts in this case. Officer Morris was an officer with the Palatine Police Department for 14 years. He went through the police academy, and up to the Siberowski arrest, he did not take a single refresher course. And he admitted that none of his training, very little, if any of his training, was geared towards drug detection. So for 14 years, we have an officer that went through the police academy, didn't undergo a single refresher course until after the Siberowski arrest. And I disagree. I don't think more training is silly. I think I frequently meet officers that have taken refresher courses and standardized field sobriety tests because the standards change from time to time. So I don't think more training is more silly. I think given the facts of this case and his lack of training with respect to drugs, I think Your Honor's correct that he did testify that he has some experience with certain narcotics because he was in some sort of gang investigations unit for some time. But he's never been effectuated with arrests for driving under the influence of drugs, and that's what we have here. So I think given the case law, it's pretty clear that there is some requirement that the officer have more training and a stronger ability to testify to someone being under the influence of drugs. And the case law is pretty clear that because of the fact that we all have ample experience with alcohol in our daily lives, that we'd be more than confident to testify when someone's under the influence of alcohol but not drugs. Well, here's a person who hits severely cars that are stopped. He doesn't know where he came from. He doesn't know what street he's on. He can't stand on one leg. He can't walk toe to toe. He flunks every test known to man. He can't even relate to somebody and answer questions. There's no alcohol involved, so he's got to be under the influence of something. What is it that he was under the influence of? Well, I would look to the significant accident that he was just involved in minutes before performing all those tests. Except he says he wasn't hurt. Well, that's fine, and there's many times that people said they're not injured or hurt, and it turns out that they do have some injury or some pain that they might not be disclosing. Well, that's after they saw the lawyer. All right, on the motion to suppress, what's our standard of review here? The standard of review on the motion to suppress, you're going to defer the course factual findings, and then you're going to review the ultimate legal decision de novo. All right, why don't you go on to the next issue? So the next issue that I want to discuss is that there wasn't sufficient evidence to find Mr. And for being that, the state brought in Cynthia Woods from the Ohio State Police, and they also brought in Trooper Hart with the Ohio State Police, who testified as a drug recognition expert. His testimony was limited. He was not able to opine as to whether or not Mr. was driving under the influence of drugs based on his investigation. And all Cynthia Woods testified to was the drugs that were found in Mr. So what about the toxicology report? So it came back positive for citalopram and catiopine. Don't quote me on the pronunciation. That's how we did it in the trial court. So what she wasn't able to tell the court was what amount was found in Mr. Sebrowski's urine when he ingested the drug, what the durational effect of that drug is. Nobody can do that. Exactly. Like A? Exactly. So the issue here is that he was charged with the A4, not the A6. The A6 would require just any amount in someone's system. So if, let's say, this came back positive for cannabis, we wouldn't have much of a case here. I mean, the A6 statute is pretty clear. But the A4 requires it to be to the point where someone's under the influence to the point of incapable of safely driving. And so even if we find Mr. Sebrowski is under the influence or has the drugs in the system, it needs to be that these drugs are what rendered him incapable of safely driving. There was no other factor that came into play that caused that accident. I know the police officer has two people who are saying they're stopped, or at least one. Right. The one who testified says, we're stopped in traffic because the traffic gets backed up in a car, plowed into the back of our car. Doesn't that kind of say you're incapable of safely driving while you're under the influence of somebody? Since you hit our car so much that your car is embedded into the back of their car, you've got to get a tow truck to pull them apart. Well, respectfully, no. I think you can be in an accident and not be rendered incapable of safely driving because of the drugs that you're under the influence of. But you have to do all the other stuff, though. I'm sorry? You have to put it together with all the other stuff. I understand that. I'm just kidding. Oh, it's more than the things that we've just mentioned. I just thought about it. He gave me two different places where he lived. He didn't know where he lived, where he was going, where he was coming from. All those things together couldn't prove beyond a reasonable doubt that the person was ingesting drugs to the point where he could not safely drive. And remember, we are looking to the judge's determination of credibility. And I understand that. And I don't think Officer Morris was an incredible witness. I think he was a very- I would say he was quite credible. And I would agree with that. But my issue is he still doesn't have the qualification that were necessary to reach that conclusion. So for you to make the knee-jerk reaction that, oh, well, I'm observing these, I'm making these observations, and I think this person is under the influence of something, I have no idea what, and I'm completely untrained to make this determination, but because of the accident, because of what I'm observing, I'm going to arrest him for driving under the influence of drugs. You're kind of ignoring the other people's testimony, though. It's not just the officer. It's the person who found out what was in those drugs, and then the next expert who testified to the effects of those two drugs. He did testify to the effects of those drugs. But, again, he said that they have a durational effect. And he actually went on to say, specifically, if you look at cannabis, it says, you know, they might not have smoked it for two weeks or something like that. That's a possibility. So he conceded that, you know, a drug can show up on a urinalysis report, and it could be in someone's system without impairing their ability to drive or making them under the influence of anything. So what about Wood's testimony that the drugs that he was maybe on that evening or in the afternoon caused dizziness, drowsiness, and lightheadedness? Well, and I did ask her about that on cross, and I said, well, what amount of those drugs would it take to cause those symptoms? And she said she didn't know. And I also questioned her further as to when Mr. Sebroski may have ingested the drugs, how much of it was left in his system, what amount would it take for someone to be under the influence. And she didn't know the answer to that. She didn't know the half-life to those particular drugs either. So really the only thing that she added to the trial was the fact that these drugs were found in Mr. Sebroski's urine. But as far as the effects of those drugs, I think it's critical to know the amount of the drug that's in someone's system, when they took it, how much of it they took. And keep in mind, Mr. Woods and Mr. Hart also testified that the drugs have different effects on different people. So whether it's somebody's... Yeah, I'm sorry. I'm sorry. I've heard so many of these cases. I sat in the trial court for 22 years. I have never heard an expert testify that they could tell you how much drugs was in a particular person at any particular time. And you keep saying that, but maybe it can happen, but I've never heard of it. I've never heard of it either, but I'm not saying that it's required that she tells me that. What I'm saying is that she's unable to tell the court that, and as such, the court can only take into account the fact that just the fact that these drugs were found in Mr. Sebroski's urine is in no way indicative of him being under the influence of it. That's all it is. I know you're parsing things, but I would say put them all together. Put them all together, because that's what a judge does. Listen to every witness' testimony and put them together and say there's this amount of proof beyond a reasonable doubt. Yeah, you can take things to separate them out, but when the whole cake is mixed up and you've got the cake, you know, if it's a cake, it's a cake. It's not just the eggs or the flour or the butter or the sugar. It's all that wrapped up together. And I understand that, but I think the facts here make it difficult to discern exactly why that accident happened and why Mr. Sebroski was on the vehicle. If there was no accident, I think I would have a very tough argument here today. If there was no accident, you wouldn't be here. Well, I don't know about that, but I think because of the fact that there was this accident, it was stressed in the state's case when they presented Mr. Nielsen, the owner of the vehicle that Mr. Sebroski struck, as opposed to how significant this accident actually was. So when they're stressing that, I mean, it's to the point where Mr. Sebroski's vehicle is totaled, there's radiator fluid leaking from it, and then the other vehicle requires $10,000 worth of... Oh, yeah, and Mr. Nielsen says the guy sat in his car. He doesn't look alert. He forgot what else he said about it. But, I mean, you hit my car. I'm getting out of the car and looking. He says the guy doesn't get out of the car. He sits there. He doesn't get out of the car. He stays in the car until the cops get there. He doesn't get out of the car. He never gets out of the car. Well, Mr. Nielsen also never met Mr. Sebroski. He never knew the extent of... He didn't know whether Mr. Sebroski required any kind of medical attention. So we don't know why Mr. Sebroski stayed in the vehicle. All right, counsel, why don't you sum up? Your Honor, I just go back to our previous argument. I think the trial court really did err in denying the motion of quash. I think Officer Morales was untrained, didn't have the requisite training to effectuate the arrest and determine that Mr. Sebroski was under the influence of drugs. Thank you very much. Thank you. Counsel, before you start, let me just point something out. I'm going to have a conversation in court while counsel is making arguments. It's a little discourteous. All right? Yes, Your Honor. Okay. You may proceed. May it please the court, my name is Brandon Hudson and I represent the people of the state of Illinois in this case. On Friday, March 22, 2013, defendant rammed his car into the back of the victim's car while the victim was stopped at an intersection at Dundee and Hicks Road in Palatine. The impact was so severe that the defendant's car pushed the victim's car into the car in front of the victim. Immediately, the victim got out, walked to the defendant's car window and said, What happened? The defendant was not responsive. The victim called 911 and Officer Morales arrived within five minutes. Upon Officer Morales' arrival, the victim told Officer Morales the defendant was not very alert. In fact, the defendant never got out of his car during the five minutes it took Officer Morales to arrive to the scene. Additionally, Officer Morales noted the victim was not responsive. Let me ask you this. What about counsel's argument that because of the impact, because of the severity of the impact of these vehicles, that, you know, the defendant was just merely disoriented, that he wasn't under the influence of any type of drugs or alcohol or cannabis, and the gentleman was just, you know, bruising from the impact? Your Honor, I would draw the court's attention to Sergeant Hart's testimony and also to the fact that the victim, nor the person that the victim hit, was incoherent or slurred speech, and also Sergeant Hart testified that this kind of impact would not cause the defendant to have slurred speech. Given the severity of the impact, the slurred speech, the dizziness, the appearing sleepy, the eyelids closing, the disheveledness, they're all observations, circumstantial evidence of impairment, and that's what even the victim noticed in this case, who was an untrained layperson. Also, Officer Morales observed the same observations, plus the dilated pupils. He didn't smell alcohol or cannabis. He asked the defendant for his insurance card. The defendant provided an AARP bond card, which does not satisfy the insurance requirement in the state of Illinois. The AARP card was provided twice to the officer by the defendant. The second time, Officer Morales did not even ask.  He was completely incoherent, Your Honor. When we have a test that is conducted by the police officer, and the gentleman doesn't pass the test, but at the same time we have no odor of alcohol, we have no odor or smell of any type of cannabis on his clothing or in his breath, the gentleman was involved in a severe accident, and then he's arrested. Don't the officers have to have a basis for conducting an arrest there? Well, Officer Morales was called to the scene by the victim, so Officer Morales arrives in a community caretaking capacity to address an accident scene. When he gets there, he speaks to the parties involved, the defendant, the victim, and the other party, and he notices, just like the victim noticed, the defendant was not alert. He's incoherent. At that point, the defendant gets out of his car voluntarily. The officer notices him fumbling and stumbling around and places him in the back of the squad car for his safety. At that point, there's no issue with custody. It's completely community caretaking and maybe escalating into a reasonable suspicion. But we still don't have a basis. We don't know what is he under. He mentions he's under prescription medications, but the officer admits that he doesn't know what the effects of these prescription medications are, so then yet he still conducts an arrest there based on an assumption, right? Isn't that what we're really dealing with here? Well, yeah, you bring up a good point. The defendant admitted he was taking Zoloft, Ambien, and Selecium, and the admission in itself is pretty clear on its face that he's been taking some drugs, which the statute requires the state to prove that the defendant had drugs in the system while he was operating a car in the state of Illinois, and that those drugs rendered the defendant incapable. We're talking about the arrest. Yes. We're not talking about in court, at suppression, we're talking about the arrest. What was the officer's basis for conducting this arrest? The basis was his training, the observations that he had when he saw a defendant, the disheveled appearance, the drowsiness, the stuttered speech. And the admission. And the admission. I mean, yes, the admission. That's a big one here. Well, the evidence that was put in here was based on the opinion of the officer, based on the basis of what he observed. Is that correct? Yes, Your Honor. That was the only evidence that there was? There was no evidence that he was not under the influence, was there? There was no evidence that he was. He had drugs? Correct, Your Honor. There was no evidence that the defendant was not under the influence. We also have the crash here. I mean, that's pretty significant direct or circumstantial evidence. I mean, the crash itself with the admission, as Justice Slamkin said, considering this all together, you know, there's no ambiguity here. It's pretty. I mean, we're talking about probable cause. We're not talking about proof beyond a reasonable doubt. Would anyone in this officer's position with all these factors believe that a crime had been committed and the defendant committed if he did his probable cause to arrest him? That's it. If there's probable cause to arrest with all those factors, the officer did what he was supposed to do. And the people agree, Justice Slamkin, probable cause is a very low standard. As Justice Reyes pointed out, we weren't at trial at this point. This was in the field. The officer was making observations that were reasonable, and based on the totality of the circumstances, he made an arrest after the defendant failed the field sobriety test. So probable cause is a very low standard. All right. What about the admission of this evidence at the hearing? Counsel raises that there was no real testimony, that he did a great job in the cross-examination of officers, unless he was an Officer Woods and Sergeant Hart. So there was nothing there for the court to consider. Well, Your Honor, there was plenty for the court to consider. Cynthia Woods testified that Cytopram and Cotiapine were found in the defendant's urine. She also testified, as Your Honor stated, that those drugs caused drowsiness, dizziness, and lightheadedness, which are the observations that Officer Morris made on the scene. The people called in Sergeant Hart to testify that Cytopram and Cotiapine are central nervous system depressants and tranquilizers, which will cause the observations which Officer Morris observed at the scene, which are the dizziness, the drowsiness, the confusion. The defendant didn't know where he lived, what time of day it was, what day it was of the year. These are all side effects of the drugs that were found in the defendant's system. Do we know how much was in the system? Your Honor, we do not know, but the statute does not require that the people prove an amount that's in the system. This is not a case that's like alcohol, like a .08. And as Justice Lamkin pointed out, there's been no experts, very few, or almost none that have testified to the amount of drugs in a defendant's system when proving a case beyond a reasonable doubt. Okay. Do you want to sum up this? Based on Officer Morris' observations, the trial court properly denied the defendant's motion to quash his arrest. On the second point, the trial court did not err in allowing the drug recognition expert testimony in a limited scope. The trial court reserved the ultimate finding of fact for itself and just allowed Sergeant Hart to testify to the effects of the drugs. And the trial judge basically decided, based on hearing all the evidence from Cynthia Woods, Sergeant Hart, Officer Morris, and the victim, David Nilsen, whether the defendant was under the influence that rendered him incapable of safely operating his vehicle. The case law is pretty clear that the trial court has wide discretion in allowing witnesses to testify, especially with expert witnesses. Sergeant Hart was qualified as an expert at trial, and his testimony was properly allowed in at the court below. If there are no questions on point two, I would like to move to point three, Your Honor, which is, has people proved the defendant drove under the influence of a drug or combination of drugs that rendered him incapable of safely operating his vehicle? Based on all of Officer Morris' observations, coupled with the victim's observations, and again, the victim is not trained, but the victim said the defendant was not very alert. Officer Morris also said that the victim was lethargic, tired, disheveled. He provided the AARP card twice. His impact was severe. The defendant's pupils were dilated. He appeared sleepy.  So based on all of these factors, which gave the officer probable cause to make the arrest at the scene, bringing these facts in at trial also proved, along with the omission and the crash itself, beyond a reasonable doubt that the defendant was under the influence of a drug or combination of drugs, which, again, Sergeant Hart testified, these combination of drugs would have a compounding effect, rendered the defendant incapable of safely operating his vehicle. So for these reasons and those included in our brief, there are no additional questions, but people ask that you affirm the defendant's conviction. Thank you. Thank you, Your Honor. Counsel? I think the question was posed to the State about, you know, given the totality of the circumstances, can we reach the conclusion, especially referring to the omission that Mr. Sobrowski made, that he was under the influence of drugs. And I just want to reiterate the point that it's pretty clear from the case law, and I want to make this clear, that you can't just have anyone come in and testify. Someone would be under the influence of drugs. Dr., could you keep mixing apples with oranges? Probable cause, my thing, at a trial proved beyond a reasonable doubt. So are you making this argument for both of them? For both. I think you can't. My concern is that I feel that Officer Morse made a knee-jerk reaction in reaching the conclusion that Sobrowski was under the influence of some drug on that day. So that's my concern, is to what point are we going to allow untrained officers to determine that someone's under the influence of a drug and then arrest them and then just say, you know what, we're just going to have to hash this out in court. I'm untrained to arrest you. I have no qualifications to make the determination that you're under the influence of anything, but we're just going to have to deal with this later. I'm going to get you off the street right now. I'm going to effectuate this arrest. So I think it should apply to both. I think if someone's untrained to come into court and give the opinion that an individual is under the influence of a drug, I think that there's no way they should be allowed to effectuate an arrest on the street and make the determination that someone's under the influence of a drug. Thank you. Thank you. Okay, the court wants to thank both counsel in a well-argued manner. The court's going to take this under advisement, and we're now going to take a recess, and we'll proceed on to the next matter before the court. Thank you.